D. R. EDWARDS, *Plaintiff in Error,* v. C. FABIAN LAW, *Defendant in Error.*

1. In the absence of express contract, the Circuit Clerk is entitled, under section 1394, Revised Statutes, in making searches for unpaid taxes and tax certificates, to charge 15 cents for each search of more than one year's standing for each year for which search was made; and to so charge whether a tax sale be or be not found. (CARTER, J., dissenting.)

2. The evidence examined and found insufficient to support the verdict. (CARTER, J., dissenting.)

This case was decided by the Court *En Banc.*

Writ of error to the Circuit Court for Clay county.

The facts in the case are stated in the opinion of the court.

*W. H. Baker* for plaintiff in error.

*L. E. Wade* for defendant in error.

COCKRELL, J.—There being a difference of opinion among the members of Division B upon questions involved herein, the cause has been referred to the whole court for determination.

The defendant in error, then clerk of Clay county, sued the plaintiff in error for services rendered at the instance of one John Murray in the matter of certain tax searches.

The Circuit Court charged that the compensation of the plaintiff as clerk for making searches for unpaid taxes and tax certificates is 15 cents for each search for more than two years for each year from which search was made. There was no contract as to compensation, and the searches extended over the years 1878 to 1900 for tax sales.

Section 1394, Revised Statutes, provides, among other things, the clerk's compensation as follows:

"Searches of one year's standing or less..............$ .10
Of more than one year's standing..................... .15"

Under chapter 4674, laws of 1899, "each application to the State Treasurer to purchase lands sold for taxes must be accompanied by a certificate from the clerk of the Circuit Court of the county in which the land is located, setting forth all the tax certificates held by the State covering all or any part of the land applied for," etc. No provision is made in this chapter for the compensation of the clerk for this work, and the sole basis for such compensation is to be found in the portion of section 1394, Revised Statutes, above quoted.

We have, then, to construe the meaning of the word "searches," in the light of the legislation and the conditions surrounding the work called for by such "search." It can not be that there is no "search" unless something be found. "Search" is defined by Webster to be "the act of seeking or looking for something."

Each year property is or should be assessed for taxation, and each year there is or should be either a payment of the taxes or the property should be sold for taxes. Each year the tax collector is required to turn over to the clerk, and the clerk is required to keep in a special book devoted to that purpose, a list of all the lands so sold. To make a "search," so as to be able to make the proper certificate under his solemn official responsibility that he has set forth all the tax certificates held by the State, he must make a search for each year back to the year 1878, prior to which time all State certificates have been cancelled by legislative enactment. As compensation for this work we think the court rightly held that the "searches," for which the legislature fixed the clerk's compensation at 15 cents each, meant the examination each year for the purpose of ascertaining if a tax sale was made that year; that the work was the same whether the search resulted in the finding of such sale

or not, and that the compensation is the same in either event.

This construction applies only to the case before us, *i. e.,* as to searches for tax sales or certificates, when there has presumably been some affirmative action each year and an examination for that special year is necessary, and as the judgment was entered April 8th, 1901, it is unaffected by the acts of 1901 and 1903. With respect to judgments, mortgages or other matters where there is no reason to apprehend yearly action or any stated action with reference to the property, and the search is merely to see whether there has been such action at any time, we are not prepared to criticise the construction placed by Judge CARTER on the statute.

The evidence is not sufficient to justify a finding that Murray was the agent of Edwards in ordering this search.

The testimony as to agency is that of the plaintiff's chief deputy clerk, that other work had been ordered for defendant by Murray and paid through Murray, and that Murray ordered this work for the defendant, saying that if the defendant would not take it he would buy the lands himself, and that of the defendant denying the authority in the alleged agent to act for him. Murray's duty was as a woodsrider to report timber lands to Edwards, who, if he thought proper, would direct Murray to order searches made, and this was done on one occasion.

The fact of previous recognized agency in Murray might authorize the plaintiff to infer agency if in the later case he purported to act as such agent, and the defendant, having held him out as agent, might be bound thereby. There is in this, however, no evidence of either express or implied representation by Murray or any one that Murray was authorized to order for the defendant the work now sued for, but merely an intimation that it was without authority ordered for the defendant's benefit, but if he would not by accepting it ratify the act of Murray in ordering it

he, Murray, would take it himself. Previous agency does not supply evidence of binding agency, where the alleged agent does not purport to act as a duly authorized agent and in the face of a direct intimation by the alleged agent when ordering the work done that the alleged principal might decline to accept the work, but if he did so decline, the alleged agent would take it himself. Previous agency justifies the other party in accepting as true representations express or implied of present agency, but does not supply the place of these when none is given, and the only intimation given is that the act is unauthorized but may be ratified.

The want of authority in Murray is further emphasized by the fact, well known to the plaintiff, that the *search fee alone* would exceed many times the usual prices for land paid by those engaged in Edwards' business, and negative any justification of Murray's agency from the previous course of dealing. The lands might be worth the price to Murray, but not to the turpentine operator Edwards, for which purposes alone the lands might presumably be wanted.

No ratification is shown, but prompt repudiation is shown. The offer of fifty dollars to settle the whole matter was by way of settling the matter amicably without resort to the courts, and can not be construed as a recognition of Murray's authority.

The judgment is reversed and a new trial granted.

TAYLOR, C. J., and MAXWELL, SHACKLEFORD and HOCKER, JJ., concur.

CARTER, J. (dissenting).—This cause was referred to and considered by Division B of the court, and there being a difference of opinion among its members as to the questions involved, it was referred to the court *en banc* for decision.

Defendant in error brought an action of assumpsit against plaintiff in error in the Circuit Court of Clay county to recover for services alleged to have been rendered at defendant's request. From a judgment for $333 rendered against him, defendant seeks relief by writ of error.

The bill of exceptions shows that the court gave the following instruction at the trial, *viz*: "If you believe from a preponderance of the evidence that the plaintiff performed the services sued for in this suit at the instance and request of defendant, or his authorized agent, in making the searches for unpaid taxes and tax certificates in this suit sued for, then the compensation of the plaintiff as an officer of the law is fixed by law and such compensation is 15 cents for each search for more than two years for each year for which search was made; and, if you find for the plaintiff, the amount of your verdict should be 15 cents for each year for more than two years made by the the plaintiff;" and that the instruction was predicated upon the following facts that the testimony tended to prove, *viz*: "that during the summer of 1900 he (the plaintiff) was clerk of the Circuit Court of Clay county, Florida, and prepared 107 searches on different pieces of land situate in the Ridgewood Division of Orange Park in said county; that these searches were made for the defendant and have not been paid for, and there was no contract between the parties as to the compensation for the searches, and that the searches extended over the years 1878 to 1900 inclusive, for tax sales." Upon an exception taken to this charge the first assignment of error is predicated. The correctness of the charge depends upon the proper construction of section 1394, Revised Statutes, which prescribes the fees of clerks of the Circuit Court. So far as it has application to this case it provides that "his compensation as clerk and recorder shall be entirely by fees and shall be as follows: * * *

Searches of one year's standing or less...........$ .10
Of more than one year's standing.............. .15"

This language is very ambiguous, as no intimation whatever is given as to what is meant by "searches." I think, however, the "search" here referred to means a search for some particular paper, or record, or to ascertain some particular fact (*Church v. St. Paul & Northern Pacific Ry. Co.,* 23 Minn. 410) ; and if that particular paper, record or fact is of less than one year's standing the fee for such search will be $ .10, while if it is of more than one year's standing the fee will be $ .15 regardless of the number of years it has been standing. If, therefore, the order given the clerk was to ascertain the tax sales upon several parcels of land, as seems to have been the case here, the clerk could not charge $ .15 for searching the records of each year, after the first year 1900, unless he found tax sales for each year, for until a sale was found, or the entire records exhausted without finding one, the search would be incomplete. If, however, he found a tax sale for each year he would be entitled to charge $ .15 for each sale found, because when found the search for that particular sale would be complete, and the finding of another in a previous or subsequent year would involve a distinct and independent search for which a separate fee would be allowed. I see nothing in searches for tax certificates to take them out of this rule. The searches for tax sales involves less work on the part of the clerk than searches for deeds, mortgages or other incumbrances, for tax sales are recorded in separate books devoted to nothing else, and under the system which has been in vogue in this State for many years, the lands sold are reported by descriptions following in consecutive and systematic order, by sections, townships and ranges, so that the description of the land being known, it requires but a few minutes to ascertain if it is embraced in the report of a certain tax sale. The fact that reports of sales are likely to be found each year, because lands are required to be

sold annually for delinquent taxes, does not in my opinion, furnish a sufficient reason for applying a different rule to tax sales. If all taxes are promptly paid each year there will be no sale, and if not paid there may be more than one sale. It is quite common in some, if not most, of the counties to have two sales every year, the second embracing lands inadvertently omitted from the first; those embraced in the first advertisement but not sold because of defects in the advertisement, as well as lands which were omitted from the first advertisement by reason of promises to the collector by the owners to pay the taxes. In case there are two sales for one year would one fee cover both sales or would a separate fee be properly charged for each sale on the theory that each sale constitutes a separate search? If the latter, then there is no basis for holding that the search is limited by the period of one year; but it would be governed by the number of sales, and in case there should happen to be no sale for a particular year, what authority would the clerk have for charging for a search for that year, seeing that the statute does not give him a fee for a search for each year, but only for a search of a certain age? It is a well known fact that in most, if not all, of the counties deeds and mortgages are recorded and judgments entered each year. Judgments of the Circuit Court are regularly entered at least twice a year at stated periods, *viz*: the terms of the court, and if a fee for tax searches is properly chargeable for each year upon the theory that in contemplation of law the lands might possibly have been sold that year, why should a like rule not be applied to mortgages, deeds and judgments upon the theory that a mortgage, deed or judgment affecting the land might possibly have been recorded or entered during that year? A search for a mortgage, deed or judgment does not involve an investigation of the records of tax sales, nor does a search for a tax sale involve an investigation of the records of mortgages, deeds and judgments, so that the fact that the search for tax

certificates must be made in separate or special records applicable only to tax sales, furnishes no sufficient reason for allowing a fee. for searching the tax sale records of each year, while denying fees upon that basis for searches of mortgage, deed and judgment records, which are all separate from and independent of the tax sale records, as well as each other.

Section 1305, Revised Statutes, prohibits officers from making two charges for the same official act or service, and from charging for any constructive service, and from charging fees for any official service performed, unless the fees be expressly authorized and their amount be specified by law. In view of the express prohibitions of this statute the court is not authorized to construe the fee bill so as to authorize two or more charges for the same official service, nor so as to allow a charge for constructive service, nor so as to allow any charge whatever except such as is expressly authorized and the amount specified by law. If we construe the statute as permitting a separate charge for a search of the tax records of each year, it seems to me we are authorizing the officer to collect fees which he is prohibited from charging by this statute, for by so construing it we divide one search into many and allow a separate fee for each. Such a construction, if applied generally, will allow fees out of all proportion to the service performed, and if confined to tax sales only, will not only permit exorbitant fees to be charged for such searches, but will place the fees for such searches upon a different basis from other searches.

According to the facts hypothesized under this charge there were only 107 searches made by the plaintiff, extending over the years 1878 to 1900 inclusive, yet the verdict found was for $333. It is very evident that under the charge of the court the jury split up these 107 searches into twenty-three times that sum, making 2,461 searches out of the 107 shown by the statement of facts. In other words,

they allowed something over twenty fees for each of the 107 searches under this charge, which is expressly forbidden by the statute referred to.

The instruction given authorized the jury to allow .15 for each search for more than two years, for *each year for which search was made,* thereby holding that every search of the records of a particular year would constitute a complete search, though no sale was found, and in thus construing the statute the court was in error. The statute does not, like the statute considered in the Minnesota case above referred to, limit the search to the records or files of each year, but places all searches in one of the two classes only, *viz*: those of one year's standing or less, and those of more than one year's standing. For this error in the charge I think the judgment should be reversed and a new trial granted, but as a majority of the court think otherwise, I will proceed to consider the only other error assigned, which is based upon the order overruling the motion for a new trial.

The only question presented in argument under this assignment of error is whether the evidence is sufficient to prove that the work was done at the request of a duly authorized agent of the defendant. Upon this subject it appears from the evidentiary bill that the work was ordered for defendant by John Murray who said at the time that if defendant did not take it he would buy the lands himself. Defendant was a turpentine operator who frequently purchased tax titles to timber lands for the purpose of using them for turpentine purposes. John Murray was a woods-rider in his employ, and his duties were to report timber lands, and, if instructed by defendant, to order searches made. Defendant admitted that once before he had directed Murray to order searches made, and that he sent money to pay for same. He denied authorizing Murray to order these particular searches, and there is nothing in the testimony tending to contradict this. Plaintiff's deputy testified

that Murray had previously at different times ordered work done for defendant and had paid for same. The work sued for was ordered in July, and performed during July and August. In September the defendant returned the certificates of search with a letter to plaintiff as follows: "Upon investigation I find that the lands covered by the tax searches would cost $3.00 per acre. How do you expect a turpentine operator to stand such prices? I never ordered this work, or told any one to order it for me. I will not pay the bill you sent me. Still, as you have done the work and are out the expense for doing it, I will stand that expense as I believe I can stand it better than you can. I will pay you $50 to settle the whole matter. This is all I will do. Then I shall be out $50 for nothing, and you will not be out anything except the profit." I am of opinion that the jury was authorized to find the defendant liable under this testimony. I do not think the remark made by Murray at the time of ordering the work, to the effect that if defendant did not take it he would buy the lands himself, can be properly construed as a denial of his authority to order the work on behalf of defendant. His evident meaning was that though he was ordering the work for defendant, yet if defendant did not choose to purchase the lands he would do so himself. The remark does not imply a doubt as to his authority to bind the defendant for the work to be done. It is not intimated in the testimony that the clerk was to be paid for his work only in the event the defendant or Murray bought the lands. Murray's duties required him to report timber lands and to have searches made when instructed by defendant. He had previously ordered work done and searches made for defendant which defendant recognized as duly authorized and which he paid for, or gave Murray money to pay for. Plaintiff had no knowledge that Murray was not instructed to order this particular work. The certificates of search came to the possession of defendant with a memorandum of the fees due therefor, and

instead of repudiating at once the act of his agent in ordering the searches made, defendant repudiated it only when he found that the land would cost too much. These and other facts shown by the testimony lead me to the conclusion that the jury was justified in holding defendant liable, and the court having approved the finding by denying the motion for a new trial, I do not think this court should set aside the verdict and grant a new trial on the ground here insisted upon.